WILL OF BERNHARD: BERNHARD, Appellant, vs. TOFT, Executor, Respondent.

*October 13—November 16, 1948.*

522

For the appellant there were briefs by *Edward G. Minor* of Sturgeon Bay, attorney, and *Frederick R. Nyberg,* of Chicago, Illinois, of counsel, and oral argument by *Mr. Nyberg.*

For the respondent there was a brief by *Bie, Welsh, Trowbridge & Wilmer* of Green Bay, and oral argument by *Rodney C. Welsh.*

HUGHES, J.   William Bernhard died August 8, 1947, at Ephraim, Wisconsin, at the age of sixty-four years.   He was an architect, having practiced his profession in Chicago until 1926 when he removed to Ephraim.

His estate consists of a home and Swedish Peasant Craft Shop, with furnishings and a stock of merchandise, together with securities and bank accounts, aggregating $35,000 to $50,000 in value.

The will admitted to probate was executed by the testator on July 16, 1947.   By it he bequeathed to his sister Isolda Bernhard his savings account in the Northern Trust Company, Chicago, amounting to $4,838.97, and gave to Margaret Spence the balance of the estate.

The testimony of the subscribing witnesses was that the will was executed by the testator in the presence of the two witnesses and that they signed in the presence of testator and of each other. There was no evidence upon this subject offered by objector.

Upon the question of testator's capacity to make a will, the evidence was without dispute that such capacity existed.

Appellant contends, however, that the trial court erred in permitting the attending physician, Dr. W. Sneeberger, to testify, and also in admitting testimony of one Dr. Clyde K. Hasley, a brother-in-law of Sneeberger, who visited the patient upon invitation of Sneeberger.

The deceased suffered from cancer, which caused an open sore on his hip. Dr. Hasley practiced in Detroit and is known there as a cancer specialist. He was visiting Dr. Sneeberger and, upon hearing of the condition of Mr. Bernhard, became interested and went with Dr. Sneeberger on one of his visits.

Both physicians were permitted to testify as to testator's mental capacity, Dr. Sneeberger upon the ground that Mr. Bower, as special administrator appointed to preserve the assets of the estate during the controversy over the will, had signed a waiver of the privilege under sec. 325.21 (4), Stats.

Appellant contends that a special administrator is not such personal representative as is contemplated by the privilege statute, and more particularly that a waiver by such special administrator, without specific authority from the court appointing him, is in excess of his authority. His waiver is certainly sufficient under the statute. That a special administrator is the personal representative of the deceased so long as he continues in office is established in this state. *Swan v. Norvell* (1900), 107 Wis. 625, 83 N. W. 934.

Since, before the close of the testimony, there was also a waiver of privilege with respect to the right of Dr. Hasley to testify, we need not consider whether the statute imposes upon a visiting physician the same obligations as upon the attending physician.

We conclude that the trial court properly received the testimony of both witnesses.

The third contest in the county court, the point most stressed upon this appeal, is that the execution of the will was procured by undue influence.

There was no testimony whatsoever implicating Mrs. Spence's sons or other representatives as actors.

In 1944, the testator's wife, Svea Bernhard, was seriously ill. Gertrude B. Seitz attended her as a practical nurse until shortly before her death. Mrs. Anna Olson, whose husband was a contractor and friend of William Bernhard, was there running the gift shop. Mrs. Spence came into the employ of the household as housekeeper about six weeks before Svea Bernhard's death, and apparently gave personal care after Mrs. Seitz left. After the death of Mrs. Bernhard, Mrs. Spence stayed a short time to get the house in order, and then returned to her home in Kenosha.

Thereafter Mr. Bernhard took his principal daily meal with a neighbor and friend, Mrs. Hachmeister. In April or May of 1945, he became ill with the flu and complained to Mrs. Hachmeister about trying to get along alone in his home, and discussed with her the possibility of getting Mrs. Spence back. In May he sent for her. She returned and continued as his housekeeper and nurse until the date of his death.

Objector's most voluminous testimony concerned a trip by testator to California where he visited his sister Isolda and many of her friends and stated to them that he was concerned about his sister's health and welfare. Several of them testified that he told them she would inherit all of his property when he died. At that time, February, 1945, his will left all to Isolda.

That, however, is no evidence of improper inducement to make a different will in February, 1947, which was the date of execution of the first will leaving substantially all of his estate to Mrs. Spence.

Three large suspicions appear to underlie the objections to this will: (1) That testator gave the bulk of his estate to Mrs. Spence, depriving the sister of it; (2) that there was a drawing away of the testator from the sister after his visit to California in February and March, 1945; (3) that testator made a trip to Florida in the fall of 1945 with Mrs. Spence, unchaperoned.

The testimony by those who had a chance to observe Mr. Bernhard in the years 1946 and 1947 to the time of his death was that while he suffered great pain and had to recline on a couch to alleviate the suffering, he was mentally alert. All of the neighbors and former friends testified that they were as warmly received during this time as they had been years before. The only exceptions were Mr. and Mrs. Olson and Mrs. Seitz. They thought they detected a coolness on the part of both Mr. Bernhard and Mrs. Spence,—nothing specific, but just a change in the atmosphere.

The trial court may well have concluded that these witnesses earned a change in attitude by their own conduct. Mrs. Olson observed that while she and Mrs. Spence occupied one wing of the house, Mrs. Spence absented herself one evening for a half hour and that Mrs. Olson was unable to determine whether she had spent the time in Mr. Bernhard's bedroom. One of the first questions asked Mr. Bernhard by Mr. Olson upon visiting him after Mrs. Spence had come to work for him, was whether he was going to marry his housekeeper.

Mrs. Seitz, who was re-employed in the Bernhard home during his last illness, spent at least some of her time examining old check stubs to determine what the testator had been paying Mrs. Spence. With them doing as much investigating around testator's home and meddling in his affairs, it would be little wonder if testator and the housekeeper both became irritated.

Victor Langsett, an attorney of Evanston, Illinois, and an old friend of the testator, testified that his proposals to visit

his old friend at Ephraim were all rebuffed. The inference to be drawn from this evidence was for the trial court. That it did not spell interference by the housekeeper, however, is amply supported. The testimony was overwhelming that in the last stages of Bernhard's illness his malady caused a vile odor. It is as probable that he put off visitors for this reason as for any other.

Much importance is attached by appellant to the testimony of Elina Cain of Beverly Hills, California. The witness stated that Bernhard, while in California, said of Mrs. Spence, "She is very dictatorial." This was offered as evidence that she was a domineering person disposed to exercise undue influence. Standing alone, it would be difficult to give it that interpretation, but when taken in connection with the rest of the conversation, it is even less persuasive. Miss Cain testified that Bernhard told her he had left everything to Isolda and that he would never marry again. She asked, "How is your housekeeper? Is she nice?" He said, "Well, she is very efficient, but she is very dictatorial."

No purpose would be served by a detailed recital of the other testimony.

The mere willing of property to one outside the family is not in itself sufficient to establish undue influence. Testator's drawing away from his sister appears from the record to have been voluntary and due, in part, to his illness. There is no indication that it was in any way encouraged by Mrs. Spence.

With respect to the third suspicion of objector: Without regard to what normal presumptions are concerning healthy persons, when a man sixty-two years of age, in ill-health, takes a trip to Florida, even though accompanied by a woman companion, it is more reasonable to assume that he is going for the purpose of regaining his health than for the purpose of violating the Mann Act.

It appears conclusively that there was no evidence adduced upon the trial from which the trial court could have found undue influence. The will was properly admitted to probate.

*By the Court.*—Judgment affirmed.

BROADFOOT, J., took no part.